UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY MARTINEZ,<br><br>   Plaintiff,<br><br>  v.<br><br>AUTO TRUCK GROUP, LLC,<br><br>   Defendant. | No. 2:24-cv-00657-DAD-JDP<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND REMANDING THIS ACTION TO THE SACRAMENTO COUNTY SUPERIOR COURT<br><br>(Doc. No. 5) |

  This matter is before the court on plaintiff's motion to remand this action to the Sacramento County Superior Court. (Doc. No. 5.) The pending motion was taken under submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No. 9.) For the reasons explained below, the court will grant plaintiff's motion to remand.

**BACKGROUND**

  On January 29, 2024, plaintiff Randy Martinez filed this putative wage-and-hour class action against his employer, defendant Auto Truck Group, LLC, in the Sacramento County Superior Court. (Doc. No. 1 at 24.) In his complaint, plaintiff brings a claim under the California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, as well as seven claims alleging that defendant violated California labor law by failing to pay overtime wages, pay meal and rest period premiums, pay sick time, provide compliant wage statements, timely pay final wages, and reimburse necessary business expenses. (*Id.* at 35–41.)

On February 29, 2024, defendant removed this action to this federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on the grounds that diversity jurisdiction exists because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000.[1] (Doc. No. 1.)  On March 21, 2024, plaintiff filed the pending motion to remand this action to the Sacramento County Superior Court, arguing that the amount in controversy requirement under 28 U.S.C. § 1332 is not met here.  (Doc. No. 5.)  On April 4, 2024, defendant filed an opposition to plaintiff's motion to remand, along with a request for judicial notice.  (Doc. Nos. 8, 8-1.)  On April 11, 2024, plaintiff filed a reply in support of the pending motion to remand, along with a declaration of plaintiff's counsel.  (Doc. Nos. 10, 10-1.)

## LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331, 1332(a).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute."  *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper.").  If there is any doubt as to the right of removal, a federal court must reject jurisdiction

---

[1] The court notes that even though plaintiff brings claims on behalf of himself and putative class members, defendant did not remove this action to this federal court based on jurisdiction pursuant to the Class Action Fairness Act ("CAFA").  As such, the amount in controversy is based on plaintiff's individual claims, not the putative class claims.  *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 941 (9th Cir. 2001) ("Examining only the claims of named class plaintiffs for purposes of the amount-in-controversy requirement in diversity class actions mirrors the treatment of the complete diversity requirement.  In both instances, subject matter jurisdiction depends only on the named plaintiffs.").

2

1   and remand the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089,
2   1090 (9th Cir. 2003); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1118 (9th Cir. 2004).[2]

3         A party's notice of removal must contain "a short and plain statement of the grounds for
4   removal." 28 U.S.C. § 1446(a). "By design, § 1446(a) tracks the general pleading requirement
5   stated in Rule 8(a) of the Federal Rules of Civil Procedure," and a "statement 'short and plain'
6   need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*,
7   574 U.S. 81, 83–84 (2014); *see also Ramirez-Duenas v. VF Outdoor, LLC*, No. 1:17-cv-0161-
8   AWI-SAB, 2017 WL 1437595, at *2 (E.D. Cal. Apr. 24, 2017) ("The notice of removal may rely
9   on the allegations of the complaint and need not be accompanied by any extrinsic evidence.").

10         When a "defendant's assertion of the amount in controversy is challenged . . . both sides
11   submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-
12   controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. The party asserting
13   diversity jurisdiction bears the burden of proving by a preponderance of the evidence—that is,
14   that it is "more likely than not"—that the amount in controversy exceeds $75,000. *Guglielmino v.*
15   *McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*,
16   102 F.3d 398, 404 (9th Cir. 1996). "A defendant cannot establish removal jurisdiction by mere
17   speculation and conjecture, with unreasonable assumptions." *Adkins v. J.B. Hunt Transp., Inc.*,
18   293 F. Supp. 3d 1140, 1144 (E.D. Cal. 2018) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d
19   1193, 1197 (9th Cir. 2015)). "When the defendant relies on a chain of reasoning that includes
20   assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions
21   must be reasonable ones." *Lindsey v. WC Logistics, Inc.*, 586 F. Supp. 3d 983, 992 (N.D. Cal.
22   2022) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)).

23         The amount in controversy "is simply an estimate of the total amount in dispute, not a
24   prospective assessment of [the] defendant's liability." *Lewis v. Verizon Comm. Inc.*, 627 F.3d

---

[2] Because removal of this putative class action was not based on CAFA, the anti-removal presumption that applies in CAFA actions does not apply here. *See White v. Torrance Ref. Co. LLC*, No. 23-cv-3216-GW-PVC, 2023 WL 5505871, at *1 (C.D. Cal. June 30, 2023) (citing *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992–93 (9th Cir. 2022) (noting that the Supreme Court has advised 'that no antiremoval presumption attends cases invoking CAFA'") (citation omitted)).

395, 400 (9th Cir. 2010). "[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018). "In calculating the amount in controversy, a court must assume that the allegations in the complaint are true and that a jury will return a verdict for plaintiffs on all claims alleged." *Page v. Luxottica Retail N. Am.*, No. 2:13-cv-01333-MCE-KJN, 2015 WL 966201, at *2 (E.D. Cal. Mar. 4, 2015); *accord Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012).[3] Moreover, "a court must include [actual and] future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Trans. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

## ANALYSIS

In the pending motion to remand, plaintiff contends that defendant improperly removed this action because defendant failed to satisfy its burden to establish federal subject matter jurisdiction based on diversity. (Doc. No. 5 at 6.) Plaintiff does not dispute that complete diversity of citizenship exists here. Instead, plaintiff argues that defendant has failed to show in its notice of removal that the amount in controversy exceeds $75,000. (*Id.*) Plaintiff has not asserted in his complaint or moving papers that he seeks less than $75,000 in this action. Rather, plaintiff asserts this this action should be remanded to the Sacramento County Superior Court because "defendant's removal of this action was based on improper and unsubstantiated calculations of the amount in controversy." (*Id.* at 18.) According to plaintiff, "defendant's removal is not based on the allegations in the complaint, is devoid of proper evidentiary support, and is based on inflated and self-serving violation rates and damages calculations," leading defendant to "arrive at its farfetched amount in controversy of $92,475–$107,100, which includes $60,000 in overblown attorneys' fees calculations." (*Id.* at 6.)

As a preliminary matter, the court notes that neither party has submitted evidence in support of their assertions regarding the amount in controversy. However, because the court finds

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

4

that defendant has not met its burden for the reasons explained below, "it is not necessary for plaintiff to come forward with evidence in support of his estimate of the amount in controversy. Where, as here, the evidence is in equipoise, i.e., no evidence on either side, 'the scales tip against federal-court jurisdiction.'" *White*, 2023 WL 5505871, at *4 (citation omitted).

In support of its notice of removal, defendant attached a short declaration from its director, Christopher Prenkert, who declared that plaintiff was paid on a weekly basis and worked a total of 35 workweeks (35 pay periods) from April 13, 2023 through December 10, 2023.[4] (Doc. No. 1-2 at ¶¶ 1, 3.) Plaintiff does not dispute that this is the relevant time period and quantity of workweeks for the purposes of calculating the amount in controversy. Mr. Prenkert also declared that "[o]n average, plaintiff worked 5 days per week," and "often worked over 40 hours per week, which was in excess of 8 hours per day," though Mr. Prenkert does not specify his foundation for making these statements. (*Id.* at ¶ 4.) Lastly, Mr. Prenkert declares that "[b]ased on plaintiff's wage statements during his employment, he earned an average hourly rate of approximately $26.00." (*Id.* at ¶ 5.) Based on the Prenkert declaration and assumptions that defendant has drawn from the allegations in plaintiff's complaint, defendant calculates the amount in controversy to be $92,475 on the low end and $107,100 on the high end. (Doc. No. 1 at 21.) This total is comprised of defendant's subtotals for plaintiff's overtime claim ($4,875 low or $19,500 high), meal periods claim ($17,675), rest periods claim ($5,250), wage statement claim ($3,450), reimbursement claim ($1,225), and attorneys' fees ($60,000).

The question for the court is whether defendant's estimates in this regard rely on reasonable assumptions and whether defendant has borne its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.

**A.     Overtime Claim**

With regard to his overtime claim, plaintiff alleges the following in his complaint. "At all relevant times, plaintiff and other non-exempt employees regularly worked various shifts, many

---

[4] Defendant has also submitted a declaration from Brendon Renouf, but that declaration pertains only to the citizenship of defendant's members, not the amount in controversy. (*See* Doc. No. 1-3.)

of which were more than 8.0 hours in a workday and 40.0 hours in a workweek." (Doc. No. 1 at 27, ¶ 17.) Further, plaintiff alleges that

> at all relevant times, plaintiff and other non-exempt employees worked regular shifts that lasted longer than 8.0 hours in a workday and resulted in non-exempt employees regularly working more than 40 hours in a workweek. However, defendant uniformly failed to properly calculate and pay overtime wages at the proper legal rate [—one and one-half times the regular rate of pay—] due to defendant's failure to include all forms of compensation/remuneration, including, but not limited to, commissions, incentives, nondiscretionary bonuses, and all other forms of remuneration in calculating the "regular rate of pay" for purposes of overtime compensation.

(*Id.* at 28, ¶ 18.)

Based solely on these allegations and without any further explanation or analysis in its notice of removal, defendant assumes that plaintiff worked overtime every single workday, calculating a "low-end" daily violation rate of 0.5 hours a day and a "high-end" daily violation rate of 2 hours a day. (Doc. No. 1 at 17–18.) Defendant therefore assumes that each workweek (i.e., each pay period), plaintiff worked 2.5 hours of overtime on the low end or 10 hours on the high end. (*Id.* at 18.) Defendant calculated the damages on plaintiff's overtime claim by multiplying $39.00 (one and one-half plaintiff's base hourly rate of $26) by the assumed number of overtime hours per week (2.5 or 10 hours), and then multiplying that weekly amount by 35 (the total number of pay periods that plaintiff worked). (*Id.*) According to defendant, its calculation results in a low-end amount of $2,437.50 and high-end amount of $9,750.00. (*Id.*) However, those figures are not mathematically correct: (i) $39.00 x 2.5 hours x 35 workweeks = $3,412.50, *not $2,437.50*; and (ii) $39.00 x 10 hours x 35 workweeks = $13,650, *not $9,750.00*.[5]

Compounding the error, defendant then doubled its incorrect amounts to account for "liquidated damages" pursuant to California Labor Code § 1194.2(a), which according to defendant, "provides that an employee shall be entitled to recover liquidated damages in amounts equal to the wages unlawfully unpaid and interest thereon." (Doc. No. 1 at 18.) But—not only

---

[5] Defendant appears to have erroneously used 25 workweeks in its calculations instead of 35 workweeks: (i) $39.00 x 2.5 hours x 25 workweeks = $2,437.50; (ii) $39.00 x 10 hours x 25 workweeks = $9,750.

6

1  did plaintiff not plead any liquidated damages nor pray for relief under this particular section of
2  the Labor Code—defendant omitted the first half of the sentence that it quoted from § 1194.2(a),
3  which states that the provision applies to actions "to recover wages because of the payment of a
4  wage less than the minimum wage fixed by an order of the commission or by statute." *See* Cal.
5  Lab. Code § 1194.2(a). Plaintiff does not even bring a claim of failure to pay minimum wages in
6  this action.

7       For these reasons, defendant's asserted total amount in controversy for plaintiff's overtime
8  claim, $4,875 (low) and $19,500 (high), are plainly unsupported and not drawn from the
9  allegations in plaintiff's complaint. Moreover, the court will not merely correct defendant's
10 calculation and use the corrected subtotals to arrive at an amount in controversy because
11 defendant bears the burden to satisfy the amount-in-controversy requirement. Importantly,
12 defendant also fails to substantiate its assumed *daily* violation rates. In its opposition to the
13 pending motion to remand, defendant argues that its estimates are supported by "the broad nature
14 of plaintiff's allegations," which use the phrase "at all relevant times." (Doc. No. 8 at 9.) The
15 court is simply not persuaded by this argument and instead finds that defendant did not rely on
16 reasonable assumptions in calculating the amount in controversy with respect to plaintiff's
17 overtime claim. As a result, "the court does not consider defendant's estimate of unpaid overtime
18 damages in its calculation of the amount in controversy." *Peppers v. Pac. Off. Automation, Inc.*,
19 No. 23-cv-7181-JGB-KK, 2023 WL 8653142, at *4 (C.D. Cal. Dec. 14, 2023); *see also White*,
20 2023 WL 5505871, at *4 ("In attempting to satisfy [its] burden, what defendant cannot do is
21 simply pull violation rates out of thin air and conclusively state that they are 'reasonable
22 inference[s]' about the most important variables involved in the necessary calculation.") (citation
23 omitted).

24 **B.      Meal Periods Claim**

25      With regard to his meal periods claim, plaintiff alleges the following in his complaint:

26         [A]t all relevant times, plaintiff and other non-exempt employees
   were denied compliant and timely 30-minute off-duty meal periods
27         as mandated by California law. Due to defendant's uniform meal
   period policies/practices, operational requirements, and work
28         demands, plaintiff and other non-exempt employees often could not

> take timely and uninterrupted net 30-minute first meal periods before the end of the fifth hour of work. Further, when plaintiff and other non-exempt employees worked more than 10.0 hours in a shift, they were not always allowed and permitted to take a mandated second meal period before the end of the tenth hour of work in violation of the Labor Code and applicable Wage Orders.

(Doc. No. 1 at 29, ¶ 24.) Plaintiff further alleges that "defendant has not paid an additional hour of pay at the 'regular rate of pay' to plaintiff and class members at their respective regular rates of pay for each violation, per California Labor Code § 226.7." (*Id.* at 36, ¶ 51.)

In its notice of removal, defendant states that because the "regular rate" is higher than the $26.00 "base hourly rate," defendant assumes a "higher regular rate of approximately $30.00 per hour," which it uses to calculate the amount in controversy for plaintiff's meal periods claim. (Doc. No. 1 at 16.) Apart from the number 30 being higher than the number 26, defendant offers no explanation as to why it chose $30.00 as a reasonable approximation of plaintiff's "regular rate." Defendant then multiplied the $30.00 regular rate by the number of missed meal periods. (*Id.*) Again, without any further explanation or analysis in its notice of removal, defendant assumes that plaintiff missed his first meal period every single day of the workweek and missed a second meal period on 2.5 days of the workweek. (*Id.*) Based on these assumptions, defendant then proceeds to miscalculate the amount in controversy for the meal periods claim with the following flawed calculation: 35 pay periods x 5 first missed meal periods per pay period *x 2.5 second missed meal periods per pay period* x $30.00 = $13,125. (*Id.*) (emphasis added). Because defendant's assumption is that plaintiff missed a total of 7.5 meal periods per pay period, the correct calculation would be to *add*, not multiply, the subtotals of the first missed meal periods and the second missed meal periods (5 + 2.5 = 7.5). Thus, the calculation based on defendant's assumptions is actually: 35 pay periods x 7.5 missed meal periods per pay period x $30.00 = $7,875.

Further contributing to defendant's flawed calculation, defendant oddly adds an additional amount of $4,550 on top of its erroneous total of $13,125, arriving at a total of $17,675 for the meal periods claim. (*Id.*) This additional amount is based on defendant's assumption that plaintiff not only "missed" his first meal period every workday, but also that these first meal

8

periods—meal periods that plaintiff did not receive—were somehow also "late/short meal periods." (*Id.*)  Defendant provides no basis for this sort of double dipping.

Moreover, as with its assumptions as to plaintiff's overtime claim, here too defendant does not connect its assumed violation rate as to missed meal periods to plaintiff's allegations. Defendant again unreasonably draws from plaintiff's use of the phrase "at all relevant times" in his allegations to mean that plaintiff was denied his first meal period every single workday and was denied a second meal period on "2.5 workdays" out of the workweek. (*Id.*)  This assumption is baseless, particularly in light of plaintiff's allegations that he "*often* could not take timely and uninterrupted" first meal periods, and that he was "*not always*" able to take a second meal period—phrases that defendant ignores in making its assumptions.  (See Doc. No. 1 at 29, ¶ 24.)

For these reasons, the court finds that defendant did not rely on reasonable assumptions in asserting the amount in controversy as to plaintiff's meal periods claim.  Accordingly, the court will not consider defendant's estimated amount in controversy for this claim.

Because the estimated amounts for the remaining claims do not exceed the $75,000 jurisdictional threshold, even if the court were to accept all of defendant's remaining estimates, defendant would still fail to satisfy its burden.  Consequently, the court need not, and does not, address whether defendant made reasonable assumptions to arrive at its estimates with regard to plaintiff's other claims.[6]  The court readily concludes that defendant has not met its burden of establishing the requisite amount in controversy by a preponderance of the evidence. Accordingly, plaintiff's motion to remand this case to the Sacramento County Superior Court will be granted.

**CONCLUSION**

For the reasons explained above:

1. Defendant's request for judicial notice (Doc. No. 8-1), which pertained to attorneys' fees, is denied as unnecessary;

---

[6] The court does note, however, that by assuming plaintiff missed his rest period every workday (*see* Doc. No. 1 at 17), defendant's assumptions as to plaintiff's rest period claims appear to suffer from similar flaws as its assumptions with regard to plaintiff's meal period claims.

2. Plaintiff's motion to remand (Doc. No. 5) is granted;

3. This action is remanded to the Sacramento County Superior Court due to this court's lack of subject matter jurisdiction; and

4. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: **July 27, 2024**

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES DISTRICT JUDGE